No. 22-1895

# United States Court of Appeals for the Federal Circuit

### MASIMO CORPORATION,

*Appellant,*

*v.*

### APPLE INC.,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN NO. IPR2020-01722

### APPLE INC.'S RESPONSE BRIEF

Lauren A. Degnan
W. Karl Renner
Michael J. Ballanco
Laura E. Powell
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

Robert Courtney
FISH & RICHARDSON P.C.
60 South 6th Street
Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

February 1, 2023

*Attorneys for Appellee Apple Inc.*

**Claims 1, 6 of U.S. Patent No. 10,470,695 (Appx130-154)**

1.  A wrist-worn physiological monitoring device configured for placement on a user at a tissue measurement site, the device comprising:

a light emission source comprising a plurality of emitters configured to irradiate the tissue measurement site by emitting light towards the tissue measurement site, the tissue measurement site being located on a wrist of the user, the plurality of emitters configured to emit one or more wavelengths;

a plurality of detectors configured to detect the light emitted by the plurality of emitters after attenuation by a circular portion of the tissue measurement site, the plurality of detectors further configured to output at least one signal responsive to the detected light;

a processor configured to receive the at least one signal responsive to the output and determine a physiological parameter of the user; and

a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side,

wherein the enclosing wall prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the circular portion of the tissue measurement site.

6.  The physiological monitoring device of claim 1, further comprising a diffuser which receives, spreads, and emits the spread light, wherein the emitted spread light is directed at the tissue measurement site.

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee Apple Inc. ("Apple") certifies the following:

1.   Provide the full names of all entities represented by undersigned counsel in this case.

   **Apple Inc.**

2.   Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

   **Apple Inc.**

3.   Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None**

4.   List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Daniel D. Smith, Kenneth Hoover**

5.   Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

   ***Masimo Corporation, et al. v. Apple Inc.,***
   **Case No. 8:20-cv-00048 (C.D. Cal.)**

   ***Masimo Corporation v. Apple Inc.,***
   **Case No. 22-1894 (Fed. Cir.)**

6.   Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated:  February 1, 2023          */s/ Lauren A. Degnan*
                                   Lauren A. Degnan

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF RELATED CASES .................................................. ix

RESPONSIVE STATEMENT OF THE ISSUES ................................... x

INTRODUCTION ................................................................................ 1

COUNTER-STATEMENT OF FACTS ................................................ 2

I.     THE '695 PATENT ................................................................. 2

II.    APPLE'S PETITION AND THE PRIOR ART ............................. 4

      A.     Sensor References .......................................................... 4

             1.     Sarantos and Mendelson-1991 .................................. 4

             2.     Ackermans ................................................................ 6

      B.     Chin ............................................................................... 7

      C.     The Sensor and Diffuser Combination ............................. 8

III.   THE BOARD'S DECISION ....................................................... 10

      A.     Sarantos, Mendelson-1991, and Chin ............................. 10

      B.     Ackermans and Chin ....................................................... 13

SUMMARY OF THE ARGUMENT ...................................................... 13

ARGUMENT ...................................................................................... 15

I.     STANDARD OF REVIEW ........................................................ 15

II.    THE BOARD'S FINDING THAT A SKILLED ARTISAN
      WOULD HAVE BEEN MOTIVATED TO USE CHIN'S
      DIFFUSER WITH SARANTOS/MENDELSON-1991 AND
      ACKERMANS IS SOUND ......................................................... 16

A.   Substantial Evidence Supports the Board's Finding that
     Chin's Diffuser Would Benefit a Reflectance-Type
     Sensor by Producing a Stronger Signal ...............................16

     1.   Chin Teaches General Benefits to Using Diffusers
          in Oximeter Sensors ................................................. 16

     2.   Chin Provides that Its Teachings May Be Used
          with a "Reflectance or a Transmittance Sensor" .................... 20

     3.   Masimo's Remaining Diffuser Arguments Do Not
          Show Lack of Substantial Evidence for the
          Board's Findings ........................................................ 24

B.   The Board Considered, and Correctly Rejected,
     Masimo's Expert's Flawed Attempt at Recreating the
     Combined Obviousness Device ...........................................27

     1.   Dr. Madisetti's Test Failed To Replicate Apple's
          Proposed Obviousness Combination ........................ 27

     2.   Rebuttal Testimony from Dr. Anthony Was Not
          Necessary To Overcome Dr. Madisetti's Flawed
          Testing ...................................................................... 34

     3.   Even Accepting Dr. Madisetti's Testing Results as
          Relevant, the Board's Decision Must Stand ........................... 38

III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
     FINDING THAT CHIN RECOGNIZES BENEFITS FOR
     INCLUDING A DIFFUSER AT TISSUE LOCATIONS THAT
     ARE THICK OR THIN ...............................................................40

A.   Chin Makes No Distinction Between Thin and Thick
     Tissue ..............................................................................40

B.   The Board Was Not Required To Infer that Chin Pertains
     to Thin Tissue Sensors Based on Masimo's Speculation ..................43

IV. SUBSTANTIAL EVIDENCE EXISTS FOR THE BOARD'S
     FINDINGS REGARDING SARANTOS AND ACKERMANS
     IN SUPPORT OF A MOTIVATION TO COMBINE ...................................46

A.    A Skilled Artisan Would Have Understood that a Diffuser Could Be Beneficially Implemented in the Sarantos/Mendelson-1991 System ........................................................46

B.    A Skilled Artisan Would Have Understood that a Diffuser Could Be Beneficially Implemented in the Ackermans System ................................................................50

V.    MASIMO PRESENTED NO OBJECTIVE EVIDENCE OF NONOBVIOUSNESS TO THE BOARD ....................................................51

CONCLUSION ........................................................................................ 52

CERTIFICATE OF SERVICE AND FILING ........................................ 54

CERTIFICATE OF COMPLIANCE ...................................................... 55

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AstraZeneca LP v. Breath Ltd.*,
603 F. App'x 999 (Fed. Cir. 2015) ....................................................25

*Belden Inc. v. Berk-Tek LLC*,
610 F. App'x 997 (Fed. Cir. 2015) ....................................................34

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ........................................................25

*Bradium Techs. LLC v. Iancu*,
923 F.3d 1032 (Fed. Cir. 2019) ...................................................19, 21

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
4 F.4th 1370 (Fed. Cir. 2021) ...........................................................37

*Dako Denmark A/S v. Leica Biosystems Melbourne Party Ltd.*,
662 F. App'x 990 (Fed. Cir. 2016) ....................................................36

*DSS Technology Management, Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) .............................................37, 38, 39

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
8 F.4th 1331 (Fed. Cir. 2021) ...........................................................21

*Ethicon LLC v. Intuitive Surgical, Inc.*,
No. 2021-1995, 2022 WL 1613188 (Fed. Cir. May 23, 2022)...........33

*Hoffmann-La Roche Inc. v. Apotex Inc.*,
748 F.3d 1326 (Fed. Cir. 2014) ........................................................25

*Homeland Housewares, LLC v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017) ........................................................36

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ...................................................23, 37

*In re Inland Steel Co.*,
   265 F.3d 1354 (Fed. Cir. 2001) ..........................................................48

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 784 (Fed. Cir. 2021) ............................................................25

*Intell. Ventures II LLC v. Aisin Seiki Co.*,
   813 F. App'x 532 (Fed. Cir. 2020) ....................................................37

*IXI IP, LLC v. Samsung Elecs. Co.*,
   903 F.3d 1257 (Fed. Cir. 2018) ..........................................................41

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ............................................................................19

*Mobility Workx, LLC v. Unified Patents, LLC*,
   15 F.4th 1146 (Fed. Cir. 2021) ..........................................................52

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
   878 F.3d 1336 (Fed. Cir. 2018) ..........................................15, 16, 17

*Outdry Techs. Corp. v. Geox S.p.A.*,
   859 F.3d 1364 (Fed. Cir. 2017) ..........................................................15

*Pearson v. Dep't of Veterans Affs.*,
   465 F. App'x 925 (Fed. Cir. 2011) ....................................................16

*Polaris Innovations Ltd. v. Brent*,
   48 F.4th 1365 (Fed. Cir. 2022) ....................................................33, 45

*Rohm & Haas Co. v. Brotech Corp.*,
   127 F.3d 1089 (Fed. Cir. 1997) ..........................................................36

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
   862 F.2d 1564 (Fed. Cir. 1988) ..........................................................34

*Thryv, Inc. v. Click-To-Call Techs., LP*,
   140 S. Ct. 1367 (Apr. 20, 2020) .........................................................35

*Ultradent Prods., Inc. v. Life-Like Cosms., Inc.*,
   127 F.3d 1065 (Fed. Cir. 1997) ..........................................19, 41, 42

*In re Warsaw Orthopedic, Inc.*,
    832 F.3d 1327 (Fed. Cir. 2016) ............................................................15

**Statutes**

35 U.S.C. § 311 ............................................................................................35

**Other Authorities**

37 C.F.R. § 42.65 .........................................................................................33

## <u>STATEMENT OF RELATED CASES</u>

Per Federal Circuit Rule 47.5(a), Apple states that no other appeals from this proceeding have previously been before this or any other appellate court.

Per Federal Circuit Rule 47.5(b), Apple is aware of the following pending case that may directly affect or be directly affected by this Court's decision in the pending appeal as it also concerns the same patent:

- *Masimo Corporation v. Apple Inc.*, Civil Action No. 8:20-cv-00048 (C.D. Cal.) (filed Jan. 9, 2020).

# <u>RESPONSIVE STATEMENT OF THE ISSUES</u>

1.      Whether substantial evidence supports that Board's finding that a skilled artisan would have been motivated to use Chin's diffuser with a reflectance-type sensor;

2.      Whether substantial evidence supports the Board's finding that Chin's teachings about the benefits of using a diffuser are not limited to tissue of a certain thickness; and

3.      Whether substantial evidence supports the Board's findings that Sarantos/Mendelson-1991 combined system and Ackermans system would benefit from a diffuser.

## <u>INTRODUCTION</u>

Masimo's appeal asks the Court to scrutinize a simple and straightforward combination of known photodetection and oximetry components. The Board's decision made the well-reasoned and logical determination that a skilled artisan would have been motivated to combine a single teaching from the Chin reference—the use of a light diffuser—with the Sarantos/Mendelson-1991 sensor system, or separately with the Ackermans sensor. These prior art references all describe oximeter sensors, and it takes no leap of logic to conclude that a skilled artisan would have sought to combine beneficial aspects of one sensor in another. This conclusion is an entirely routine obviousness combination under the law.

Masimo's appeal does not present any legitimate legal challenges to the Board's decision. Masimo also does not dispute that the prior art teaches all limitations of the challenged claims. In fact, Masimo disclaimed most of the '695 patent's claims in response to Apple's petition. Masimo's narrow appeal challenges merely whether a skilled artisan would have been motivated to combine the prior art references to arrive at the '695 patent's remaining claims.

The Board's finding that a motivation to combine does exist should not be disturbed. The Board relied on the actual teachings of the prior art, and Apple's expert testimony analyzing that disclosure, to arrive at its finding. At the same time, the Board rejected Masimo's attempt to impermissibly limit the broad teachings in the prior art, and Masimo's expert's presentation of "experimental" evidence that failed to analyze the combined system Apple proposed.

Masimo retreads the same failed factual arguments that the Board roundly rejected, hardly grappling with the Board's findings or supporting reasoning. In so doing, Masimo does not appreciate the substantial-evidence deference owed to the Board's finding, and asks this Court to substitute its own findings in place of the Board's. This Court should reject Masimo's arguments and affirm the Board's decision.

**COUNTER-STATEMENT OF FACTS**

## I.    THE '695 PATENT

Claims 6, 14, and 21 of the '695 patent are made up of a collection of elements all of which existed in the art long before the '695 patent. Masimo did not dispute before the Board (and does not now on appeal) that the limitations of the '695 patent appear in prior art pulse oximeters. *See* Appx18. Indeed, upon institution of the IPR proceeding, Masimo disclaimed many of the '695 patent's claims in view of the prior art. Appx370; Appx565 (13:2-9). The disclaimed claims include independent claim 1, from which representative claim 6 depends. Claim 1, directed to a wrist-worn oximeter, includes features such as "a light emission source," Appx153 (15:35), "a plurality of detectors," *id.* (15:41), and "a processor," *id.* (15:46). These components were well-established in oximetry before Masimo's patent.

After its disclaimer, the only '695 patent claims that remained active during the IPR proceeding were claims 6, 14, and 21. Appx370; Appx565 (13:2-9). Each of these claims requires a "diffuser," the goal of which is to "receive[], spread[],

and emit[] the spread light." Appx153 (16:16-19). Yet, as Masimo conceded, such diffusers were known in the art as well. *See* Appx18.

Not all of the '695 patent's embodiments disclose a diffuser, but the embodiment shown in Figure 3 is one that does. The figure, reproduced with annotation below, includes an emitter 302 (blue), a light diffuser 304 (yellow), and a detector 310 (green). Appx149 (7:4-14). In this embodiment, the detector is located on the opposite side of the user's finger from the emitter, with the diffuser between them.



Appx139 (Fig. 3) (annotations added).

Other embodiments of the '695 patent show a different arrangement of the components. For example, the embodiment depicted in Figure 7A has an emitter 702 (blue) and light detector 710 (green) on the same side of the measurement site 102, i.e., the user's wrist. Appx150-151 (10:40-11:9). The diffuser 704 (yellow) in this embodiment is also on this same side of the user's wrist. The '695 patent describes this design as a "3D reflective pulse oximetry sensor." Appx150 (10:41).

3



FIG. 7A

Appx143 (Fig. 7A) (annotations added).

## II.    APPLE'S PETITION AND THE PRIOR ART

Following a petition by Apple, the Board found the challenged claims, claims 6, 14, and 21, unpatentable as obvious. Appx29-30. The Board's IPR decision details the evidence Apple presented that a skilled artisan would have viewed the challenged claims' oximetry system as obvious in view of two grounds: (1) Sarantos, Mendelson-1991, and Chin; and (2) Ackermans and Chin.

### A.    Sensor References

For all the limitations besides the claimed diffuser, Apple presented two grounds: Sarantos and Mendelson-1991, and Ackermans.

#### 1.    Sarantos and Mendelson-1991

"Sarantos" is U.S. Patent No. 9,392,946 titled "Heart Rate Sensor with High-Aspect-Ratio Photodetector Element." Appx1333-1362. Sarantos describes "[photoplethysmographic (PPG)] sensors designed for use with wearable biometric monitoring devices" and which measure "physiological parameters" of a wearer,

4

such as "heart rate" and "blood oxygenation levels." Appx1353 (6:66-7:3); Appx1357 (13:39-47).  Sarantos describes its wearable form factor as "a wristband-type wearable fitness monitor that incorporates a PPG sensor[.]" Appx1353 (5:55-56).  Sarantos operates by "shining light into a person's skin," which "diffuses through the person's flesh" and then a "portion of this light is . . . emitted back out of the person's skin in close proximity to where the light was introduced into the flesh."  Appx1354 (7:24-28).

Sarantos is a multi-detector sensor, meaning it has a plurality of sensors for detecting the light from its emitters.  Specifically, as shown in Figure 18, reproduced below with the annotations from Apple's petition, Sarantos has multiple photodetectors 1812 for detecting light from its light source 1808, which has two LEDs 1810.  Appx1353 (6:39-42); Appx1357-1358 (14:60-62, 15:24-43).



Appx175 (reproducing, with annotation, Appx1345 (Fig. 18)).

The other sensor reference for this ground is an article from the Journal of Clinical Monitoring titled "Skin Reflectance Pulse Oximetry: In Vivo

Measurements from the Forearm and Calf," referred to in the proceedings as "Mendelson-1991." Appx1363-1368.  Mendelson-1991 includes, among other things, multiple "photodiodes," "light-emitting diodes (LEDs)," and an "optical shield." Appx1364.  Relevant to Apple's petition, Mendelson-1991 also includes a display and specifically discloses a circular light blocking/enclosing wall. Appx1364-1365.

### 2. Ackermans

"Ackermans" is a PCT application titled "Medical Optical Sensor." Appx1369-1388.  Ackermans pertains to "medical optical sensors and systems" for measuring blood oxygenation levels.  Appx1371 (1:2-5).  In one embodiment, Ackermans describes an optical sensor 10 "designed to be attached to the skin" and specifically "touching the skin."  Appx1374 (4:33-34).  The optical sensor 10 includes a light emitter 20 for emitting light 21 and a photodetector 30 for detecting reflected light 31 from a user's skin.  *Id.* (4:22-24).

In another embodiment, Ackermans, like Sarantos, also included a plurality of photodetectors.  As shown in Figure 2, reproduced below with the annotations from Apple's petition, this embodiment has multiple photodetectors 30 and an emitter 20.



Appx231 (reproducing, with annotation, Appx1385 (Fig. 2)).

**B.    Chin**

"Chin" is U.S. Patent No. 6,343,223 titled "Oximeter Sensor with Offset Emitters and Detector and Heating Device."  Appx1321-1332.  As its title suggests, Chin describes a pulse oximeter like the other prior art references.  Chin includes several embodiments, but describes that the sensor of its invention "could be any type of sensor," that it "could attach to any body part," and that "it could be a reflectance or a transmittance sensor."  Appx1329 (5:54-57).

Relevant to this proceeding is Chin's disclosure concerning the use of light diffusers.  Chin explains that diffusers cause light "to pass through more tissue, and thus more blood."  Appx1327 (2:4-7)).  Applying such a diffuser to one of its embodiments, Chin explains that the diffuser "causes a further spreading or mixing of light and may enhance the amount of tissue penetrated in some instances."  Appx1330 (8:25-29).  Figure 7B, reproduced below, shows this configuration with Chin's emitter 176 (blue), diffuser 180 (yellow), and detector 178 (green).



Appx1325 (Fig. 7B) (annotations added).

## C.    The Sensor and Diffuser Combination

Apple's proposed combination is straightforward: apply Chin's diffuser to the sensor systems of Sarantos/Mendelson-1991,[1] or separately Ackermans. Apple's petition describes how a skilled artisan reviewing the prior art would have viewed it as obvious to combine them in such a way as to practice the challenged claims. *See* Appx227-229; Appx268-270.

Specifically, Apple argued that it "would have been obvious to a POSITA to combine Chin's diffuser with Sarantos-Mendelson-1991's physiological monitoring device to diffuse the light that is emitted from the light source emitters so that the emitted light could pass through more tissue and blood, as taught by Chin." Appx227 (citing Appx1327 (2:4-7); Appx1330 (8:25-29); Appx1178 (¶96)). Apple's petition depicts the combination.

---

[1] Apple also proposed combining Sarantos and Mendelson-1991, which Masimo did not contest before the Board. *See, e.g.*, Appx376; Appx559 (7:7-16).



Appx228.  Apple presented the same argument regarding the combination of Chin's diffuser with Ackermans.  *See* Appx268-269 (citing Appx1327 (2:4-7); Appx1330 (8:25-29); Appx1216-1217 (¶161)).

Apple also presented testimony by Brian W. Anthony, Ph.D., an MIT research scientist, who explained the obviousness over the prior art in Apple's grounds.  Appx1178-1180 (¶¶96-101); Appx1216-1218 (¶¶160-163).  Dr. Anthony described how a skilled artisan "would have been motivated to incorporate Chin's diffuser into the pulse oximeter of Sarantos and Mendelson because the diffuser will cause the light 'to pass through more tissue, and thus more blood,' resulting in a stronger reflected signal, with less relative noise, at the detectors, which 'allows it to be more easily processed by the oximeter electronics and software' to determine the measured physiological parameters."  Appx1179-1180 (¶99) (citing Appx1327 (2:4-7); Appx1330-1331 (8:25-29, 9:64-10:7)).  Dr. Anthony explained that doing so would involve "nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results."  Appx1179 (¶98).  Dr. Anthony made the same observations regarding the combination of Chin with Ackermans.  Appx1217-1218 (¶¶162-163).

## III.    THE BOARD'S DECISION

The Board agreed with Apple and found the challenged claims obvious in view of the asserted prior art.  Appx17-30.  After summarizing the '695 patent and the prior art, the Board began its analysis by recognizing that Masimo "does not dispute that all the features of claims 6, 14, and 21 are found in the cited prior art references," and disputes only whether Apple had "established adequate reasoning to combine those references' teachings."  Appx18 (citations omitted); Appx28. The Board "considered all of Patent Owner's arguments, but . . . f[ou]nd them unavailing," describing in turn each of them, many of which Masimo makes again on appeal.  Appx18.

### A.    Sarantos, Mendelson-1991, and Chin

Beginning with the Sarantos, Mendelson-1991, and Chin ground, the Board "observe[d] that Patent Owner's attempt to establish a distinction between sensors or devices applied to alleged 'thin' tissue as opposed to 'thick' tissue" to get around Chin's broad disclosure "draws little, if any, support from the prior art evidence of this proceeding."  Appx18.  Instead, the Board "share[d] [Apple]'s view that [Masimo] provides inadequate evidentiary support to make out a case that there is a dichotomy as between 'thin tissue' and 'thick tissue' pulse oximeters such that they represent distinct classes of sensors whose various aspects and features are uncombinable."  Appx19.

10

The Board observed that Masimo "neglect[ed] to consider the full extent of Chin's teachings." Appx19. Although Masimo argued that a skilled artisan would confine Chin's teachings to highly particular embodiments, the Board found that there "can be no credible argument that a skilled artisan would not readily regard Chin's teachings as extending beyond" those embodiments. Appx20. In support, the Board cited Chin's disclosure that "its sensor 'could be *any type* of sensor' and is 'attach[ed] to *any* body part.'" Appx20 (Appx1329 (5:55-56));[2] *see also* Appx22-23.

Furthermore, the Board found "persuasive Petitioner's view, and the supporting testimony of Dr. Anthony, that a skilled artisan would have recognized from Chin's disclosure that the light spreading benefits of a diffuser provide for a 'stronger reflected signal' that facilitates determining measured physiological parameters." Appx21 (citing Appx229; Appx1327 (2:4-7); Appx1330-1331 (8:25-29, 9:64-10:7); Appx1179-1180 (¶99)).

The Board also rejected Masimo's argument that a skilled artisan would not have been motivated to implement Chin's diffuser in the device of Sarantos/Mendelson-1991 or Ackermans because of structural differences between them. Appx21-22. Because "[a] person of ordinary skill in the art is a person of ordinary creativity," the Board found that a skilled artisan "would have understood

---

[2] All emphasis is added unless noted otherwise.

how to implement [Chin]'s diffuser[] in other types of heart rate or pulse oximeter sensors, such as those of Sarantos and Mendelson-1991, in structural configurations necessary to harness the recognized benefits of such diffusers" and "credit[ed] Dr. Anthony's testimony to that effect." Appx22 (citing Appx1178-1180 (¶¶96-101)).

The Board found that Masimo had not shown, as it argued, that applying Chin's diffuser to Sarantos/Mendelson-1991 would cause the system to perform worse. Appx23-26. On this point, the Board declined to assign significant weight to a post-hoc experiment that Masimo's expert, Dr. Madisetti, had presented attempting to demonstrate what a skilled artisan would understand about the combination. Appx25-26. One of the reasons the Board discounted the experiment was that it included a single detector system, whereas Apple's proposed combination covered multi-detector systems. Appx25.

The Board also recognized, however, that even were Masimo correct, its argument would not save the challenged claims because, "[i]n this case, even if some negative or undesirable conditions were to emerge in some circumstances from the use of a diffuser as a part of one type of oximeter sensor, that does not establish the non-obviousness of such a sensor with a diffuser." Appx23-24. On this point, the Board credited Dr. Anthony's testimony over that of Masimo's expert, Dr. Madisetti. Appx24 (citing Appx227-229; Appx417-420; Appx423-426; Appx1178-1180 (¶¶96-101)).

12

The Board ultimately concluded that Apple had shown that the challenged claims would have been obvious in view of Sarantos, Mendelson-1991, and Chin. Appx26.

### B.    Ackermans and Chin

With respect to the Ackermans ground, the Board observed that Ackermans's teachings are "effectively equivalent to the combined teachings of Sarantos and Mendelson-1991." Appx27. Unsurprisingly, the Board also observed that Masimo's arguments against the Ackermans combination "essentially mirror those that were offered for the ground based on Sarantos, Mendelson-1991, and Chin." Appx28 (citations omitted). As such, the Board "conclude[d] that [its] reasoning presented . . . in connection with the combination of Sarantos, Mendelson-1991 and Chin also applies to the combination based on Ackermans and Chin." Appx28. Thus, the Board concluded that Apple had shown that the challenged claims would have been obvious in view of Ackermans and Chin. Appx29.

This appeal followed.

### <u>SUMMARY OF THE ARGUMENT</u>

This Court should affirm the Board's decision finding the challenged claims of the '695 patent obvious over the asserted prior art. Each of Masimo's arguments presents a misguided attempt to chip away at the Board's finding that a skilled artisan would have been motivated to combine the relevant prior art references. These arguments require the Court to determine whether substantial

evidence supports the Board's finding of a motivation to combine. The Board's well-reasoned decision has more than substantial evidence support.

*First*, Masimo's argument that a skilled artisan would not have been motivated to include Chin's sensor in a reflective-type sensor unduly discredits Chin's teachings. Chin explains that diffusers beneficially allow light to penetrate more tissue. Dr. Anthony concluded that, in view of this teaching, a skilled artisan would have been motivated to incorporate Chin's diffuser into the Sarantos/Mendelson-1991 and Ackermans sensors to generate a stronger signal and spread light in a beneficial way. Moreover, Chin itself discloses that its teachings are not limited to a particular type of sensor. This evidence, upon which the Board relied, is substantial. The Board's discounting of the Dr. Madisetti's "experiment" was wholly justified, as the test did not replicate the combination Apple proposed. The Board is not required to accept and credit such evidence.

*Second*, Masimo's theoretical argument that Chin's diffuser teachings are limited to "thin" tissue cannot be reconciled with Chin's disclosure. Chin never discusses a distinction between thin and thick tissue sites. Instead, Chin explains that its teachings relate to any body part. The Board properly rejected Masimo's attempt to limit Chin's broad teachings to certain embodiments. The Board instead relied upon the teachings of the prior art record before it, and Apple's expert's testimony, which both demonstrate that a skilled artisan would not have understood Chin's teachings as being narrowly limited. The Board's findings in this regard have substantial evidence support.

*Third*, Masimo is incorrect that a skilled artisan would have not been motivated to combine Chin's diffuser with Sarantos/Mendelson-1991 and Ackermans because it would disrupt the functioning of these systems. Masimo has no support in the prior art to show that using a diffuser in these systems would make them inoperable. Masimo's attempt to limit Sarantos to one of its embodiments with a particular emitter arrangement disregards separate disclosure in Sarantos that its invention is not so limited. Ultimately, the Board correctly concluded that Masimo simply could not support the many assumptions required to support this argument, and substantial evidence supports the Board's rejection of the argument.

The Board's decision should be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW

Obviousness is a mixed question of law and fact, with the Board's legal conclusions reviewed de novo and its factual findings for substantial evidence. *See Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1341 (Fed. Cir. 2018). Among the questions of fact underlying obviousness are the scope and content of the prior art, and whether a skilled artisan would have motivation to combine the prior art references. *See Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1368 (Fed. Cir. 2017); *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1332 (Fed. Cir. 2016).

Substantial evidence "is a highly deferential standard of review." *Pearson v. Dep't of Veterans Affs.*, 465 F. App'x 925, 928 (Fed. Cir. 2011). It is defined as "something less than the weight of the evidence but more than a mere scintilla of evidence, meaning that it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Monsanto*, 878 F.3d at 1341 (internal quotations omitted). Thus, even "[i]f two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Id.* (internal quotations omitted).

## II.    THE BOARD'S FINDING THAT A SKILLED ARTISAN WOULD HAVE BEEN MOTIVATED TO USE CHIN'S DIFFUSER WITH SARANTOS/MENDELSON-1991 AND ACKERMANS IS SOUND

### A.    Substantial Evidence Supports the Board's Finding that Chin's Diffuser Would Benefit a Reflectance-Type Sensor by Producing a Stronger Signal

#### 1.    Chin Teaches General Benefits to Using Diffusers in Oximeter Sensors

Masimo's first error is asserting that there is no substantial evidence support for the Board's finding that Chin teaches that a diffuser would result in a stronger reflected signal, and that a skilled artisan would have been able to incorporate that benefit into a reflectance-type sensor. Blue Brief ("BB") 45-51. Masimo fuels its own error by essentially ignoring both Chin's own text, as well as the testimony of expert witness Dr. Anthony, who explained in detail how applying Chin to reflectance sensors was both clear and straightforward. The Board (correctly)

relied on such evidence to support its findings, and nothing in Masimo's brief demonstrates error in that reliance. Indeed, Masimo presents nothing more than its attorney-argument interpretation of Chin in an attempt to force its reading of the reference over the Board's. The relevant question, however, is whether the Board's findings are supported by substantial evidence, not whether Masimo could have presented substantial evidence for its position, even though it did not. *See Monsanto*, 878 F.3d at 1341.

The Board's finding that a diffuser would strengthen a light signal comes from the express teachings of Chin. As discussed above, Chin begins by setting out in its background section that "generally th[e] use of a diffuser is understood to be beneficial in causing light '***to pass through more tissue, and thus more blood***.'" Appx20 (citing Appx1327 (2:4-7)). As an illustrative example, Chin teaches incorporating a diffuser into a nostril sensor, describing the benefit of the diffuser as "further spreading or mixing of light and ***may enhance the amount of tissue penetrated in some instances***." Appx1330 (8:25-29). The Board properly recognized that this part of Chin "more particularly" demonstrates the benefits of a diffuser. Appx20-21 & n.9 (citing Appx1330 (8:25-29); Appx1325 (Figs. 7A-7B)).

Masimo makes the fallacious allegation that (to an ordinarily skilled artisan) nothing in Chin suggests that a diffuser is beneficial. It contends, inaccurately, that the teachings above are not generally applicable to pulse oximetry. First, Masimo attempts to cabin Chin's broad and general teaching that diffusers cause light "to

pass through more tissue, and thus more blood" because Chin explains this benefit is experienced by "[o]ne type" of sensor. BB 46 (quoting Appx1327 (2:4-7)). Masimo misreads Chin. Chin states that "one type" of prior art sensor has recognized this benefit, not that the benefit is limited to only that one type of sensor. Appx1327 (2:4-7) ("One type of oximeter sensor will add a diffusing optic to diffuse the light emitted from the light-emitting diodes (LEDs) to cause it to pass through more tissue, and thus more blood."). Masimo further attempts to avoid Chin's general teachings by arguing that Chin's recognition of the benefit of a diffuser with its nostril sensor must be confined to transmittance-type sensors, which the nostril sensor happens to be. BB 46-47. Yet, Chin makes no statement or suggestion that its observation about the benefits of diffusers depends on the type of sensor to which the diffuser is applied. *See* Appx1327 (2:4-7); Appx1330 (8:25-29).

The Board considered these arguments and flatly rejected them, with good basis. As the Board recognized, Chin "does not limit its teachings as to a diffuser to any one particular type of sensor." Appx21. As the Board correctly noted, nothing in Chin, in any other part of the record, or in any of Masimo's arguments suggests that Chin's diffuser would not work predictably in other designs (such as pulse oximeters). *See* Appx21 (describing how Masimo "simply provides no cogent basis that Chin's diffuser would not function predictably as disclosed, i.e., spreading light so that it passes through more tissue and blood, when used in conjunction with other types of sensor devices . . . ."). The Board reached this

18

conclusion by relying on not only Chin's teachings, but also the "supporting testimony of Dr. Anthony," Apple's expert, which the Board found "persuasive." Appx21 (citing Appx1179-1180 (¶99)).  Dr. Anthony had opined that Chin's disclosure would lead a skilled artisan to conclude that incorporating a diffuser in certain oximeter sensor systems, like that of his proposed combination, would "result[] in a stronger reflected signal, with less relative noise, at the detectors." Appx1179-1180 (¶¶99-101) (citing Appx1327 (2:4-7); Appx1330-1331 (8:25-29, 9:64-10:7)).

Thus, substantial evidence supports the Board's finding that Chin's "plain disclosure recognize[s] the general benefits of a diffuser" to oximeter sensors. Appx23.  In reaching this finding, the Board aptly cited the correct legal standard from *KSR* that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  Appx21 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-22 (2007)).  Further contrary to Masimo's argument, the law is clear that, when the prior art presents a teaching while describing a particular embodiment, the teaching, without more, is not limited to that embodiment.  *See Ultradent Prods., Inc. v. Life-Like Cosms., Inc.*, 127 F.3d 1065, 1068 (Fed. Cir. 1997) (holding district court erred in confining scope of general teaching in prior art to its preferred embodiment); *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1049 (Fed. Cir. 2019) ("[A] reference must be considered not only for what it expressly teaches, but also for what it fairly suggests.").

### 2.    Chin Provides that Its Teachings May Be Used with a "Reflectance or a Transmittance Sensor"

Chin's general disclosure touting the benefits of diffusers is not caveated with reference to any particular type of sensor.  Apart from this standalone teaching, however, is affirmative disclosure in Chin indicating that its teachings are generally applicable to all sensors, and specifically reflectance or transmittance sensors:

> The sensor ***could be any type of sensor***, such as a durable sensor or a disposable sensor.  It ***could attach to any body part***, such as the earlobe, finger, etc. The sensor ***could be a reflectance or a transmittance sensor***.

Appx1329 (5:54-57).

This disclosure flies in the face of, and dooms, Masimo's argument that the benefits of Chin's diffuser are necessarily restricted to a transmittance-type sensor like that of Chin's nostril sensor.  BB 46-51.  The Board naturally concluded that, in addition to "Chin's plain disclosure recognizing the general benefits of a diffuser," its "any type of sensor" disclosure reproduced above would have demonstrated to a skilled artisan that "Chin contemplates various sensor types and that those sensors, including use of a diffuser, may be applied to various body parts of a user."  Appx23 (citing Appx1178-1180 (¶¶96-101)).  The Board correctly discredited Masimo's restrictive reading of Chin as "overly focus[ing] on the specific configurations of single embodiments" and "not reflect[ing] an appropriate obviousness analysis that takes into account the inferences and creatives steps that a skilled artisan would employ."  Appx22 (citing *KSR*, 550 U.S. at 421).  Masimo

20

does not, and cannot, dispute this bedrock principle of obviousness law upon appeal.

To sidestep this unambiguous disclosure in Chin, Masimo seeks to cabin the disclosure to a specific embodiment, particularly one describing a heater, or thermistor.  BB 48, 49 (citing Appx1329 (5:26-62)).  Masimo reads Chin too narrowly.  As its title indicates, Chin is directed to an "oximeter sensor with offset emitters and detector and heating device," and claims sensors with this configuration.  Appx1321; Appx1331-1332 (10:26-12:35).  The thermistor embodiment Masimo cites does include this sensor configuration and the thermistor embodiment describes a particular "sensor 15."  Appx1329 (5:27-33).  However, the "any type of sensor" disclosure upon which the Board relied does ***not*** reference this particular sensor 15, but sensors generally.  *Id.* (5:54-57).  This distinction in usage strongly indicates that Chin's "any type of sensor" passage is not confined to the thermistor embodiment.  At the very least, it demonstrates that the Board's interpretation is reasonable, and "[w]hen it comes to competing interpretations of the teachings of prior art references, [the Court] must uphold the principle that if two inconsistent conclusions may reasonably be drawn from the evidence in record, ***the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence***."  *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1347 (Fed. Cir. 2021) (citations omitted).

21

Otherwise, Masimo simply ignores Chin's teaching that its sensors may be "a reflectance or a transmittance sensor," and argues that a skilled artisan would not use a diffuser in a reflectance-type sensor.  BB 47-51.  This argument is unsupported by any expert testimony concerning the paper record of the references,[3] but instead by an unguided and speculative attorney-argument march through Chin.  Regardless, these arguments do not justify upsetting the substantial evidence findings made by the Board.

For example, in response to Chin's teaching that a diffuser "may enhance the amount of tissue penetrated," Masimo argues without any cited support that a skilled artisan would not have believed that increased penetration would benefit a reflectance-type sensor because "penetration is the opposite of reflection."  BB 47 (quoting Appx1330 (8:20-29)).  This argument simply is at odds with Dr. Anthony's expert opinion that Chin's "diffuser will cause the light 'to pass through more tissue, and thus more blood,' resulting in a stronger reflected signal, with less relative noise, at the detectors" in the reflectance sensors of Sarantos/Mendelson-1991 and Ackermans.  Appx1179-1180 (¶99).  Masimo's argument that this logic does not apply because Chin discusses increased light passing through tissue ignores that, prior to passing through tissue, the increased light hits the surface of the tissue.  Thus when Chin's diffuser is combined with the Sarantos sensor, more

---

[3] As described in the following section, rather than examine Chin's plain teachings, Masimo's expert set out to disprove them with an "experiment" to purportedly show that diffusers would reduce signal strength.  The Board correctly discounted this evidence.  *See infra* Arg. Sec.II.B.

light is reflected thus resulting in a stronger reflected signal. In view of the record established by Chin, the Board was free to accept Dr. Anthony's testimony on this point, as it did. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1041 (Fed. Cir. 2017) ("[T]he PTAB is permitted to weigh expert testimony and other record evidence . . . .").

Masimo's other incorrect theory is that, because Chin recognizes differences between transmittance-type and reflectance-type sensors somehow the two are incompatible with respect to the benefits of a diffuser. BB 49-51. This argument—presented again without any cited expert support—does not connect the distinctions Chin draws between the two types of sensors and the impact these differences would have on the use of a diffuser. As the Board recognized in concluding that Chin's diffuser teachings are not restricted to a particular type of sensor, "[t]he [obviousness] analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." Appx22-23 (quoting *KSR*, 550 U.S. at 421).

Moreover, the disclosure Masimo cites in Chin describing reflectance sensors actually supports Dr. Anthony's conclusion that a diffuser would benefit such a sensor. With reference to the reflectance sensor of Figure 5E, Masimo highlights in Chin the notion that reflective surface 150 "allows . . . more light to be directed back into the tissue to arrive at detector 142":

23



BB 50 (quoting Appx1330 (7:32-42), annotating Appx1324).  It stands to reason
that more light penetrating the tissue 146—the effect Chin teaches that its diffuser
would have—will result in more light reaching reflective surface 150 to be
reflected back towards detector 142.  Therefore, Chin's description of reflectance-
type sensors supports Dr. Anthony and the Board's conclusions that a skilled
artisan would have believed that a diffuser could, and would, benefit an oximeter
sensor system.  Appx1179-1180 (¶¶99-101); Appx20-23.

### 3. Masimo's Remaining Diffuser Arguments Do Not Show Lack of Substantial Evidence for the Board's Findings

Masimo's remaining arguments also fail to discredit or undermine the
Board's findings about a diffuser's benefits as taught by Chin.

First, the Board did not arbitrarily rely upon Chin's background section to
support its diffuser finding while rejecting Masimo's citation to Chin's background
for a different argument.  *Contra* BB 48-49.  Masimo confuses the two incongruent
situations.  To support its failed argument that Chin is limited to "thin" tissue
sensors, discussed *infra* Arg. Sec.III, Masimo cited to a portion of Chin's
background section.  Appx372 (citing Appx1327 (1:14-21)).  The Board rejected
this argument not because it came from Chin's background section, but because it
did nothing more than "simply describe a general background of oximeter

sensors," with no suggestion of the thin/thick tissue delineation for which Masimo advocated. Appx19. Highlighting the irrelevance of this passage, Masimo does not seek to rely on it here (as part of its appellate argument) that Chin is limited to "thin" tissue sensors. *See generally* BB 39-45. The Board never concluded or suggested that Chin's background section could not be used to support obviousness, and the law is clear that it may. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 799 (Fed. Cir. 2021) (rejecting Board's refusal to credit disclosure from prior art's background section as supporting motivation to combine); *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015) ("A reference must be considered for everything it teaches by way of technology . . . .").

Masimo also argues, without any legal support, that Chin's disclosure that its nostril sensor diffuser "***may*** enhance the amount of tissue penetrated in ***some*** instances" is too qualified to supply a motivation for a skilled artisan to use a diffuser generally. BB 47 (emphasis Masimo's) (quoting Appx1330 (8:20-29)). To the extent Masimo argues that Chin needed to teach explicitly that its diffuser would lead to guaranteed success at improving signal strength in all oximeters, "[c]onclusive proof of efficacy is not necessary to show obviousness." *Hoffmann-La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1331 (Fed. Cir. 2014). Instead, "[a]ll that is required is a reasonable expectation of success." *Id.* For the prior art to meet this standard, "only a reasonable expectation of success, not a guarantee, is needed." *AstraZeneca LP v. Breath Ltd.*, 603 F. App'x 999, 1002 (Fed. Cir. 2015) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007)).

On this point, the Board made an express finding that a skilled artisan would indeed have had a reasonable expectation of success implementing Chin's diffuser in the Sarantos/Mendelson-1991 and Ackermans sensors. Appx21-22; Appx28. In particular, in view of Chin, the Board found that it was "not satisfied by Patent Owner's arguments that some structural and operational differences between the [combinatory] sensors . . . as compared with that of Chin means that a skilled artisan would not have expected success in combining those teachings" because "a person of ordinary skill in the art is a person of ordinary creativity." Appx21-22 (citing *KSR*, 550 U.S. at 421); Appx28. Further, the Board looked to Dr. Anthony's opinion that skilled artisan "would have understood how to implement such diffusers . . . ***in structural configurations necessary to harness the recognized benefits of such diffusers***" in the combinatory sensors. Appx22 (citing Appx1178-1180 (¶¶96-101)); Appx28. Masimo's assertion that Chin cannot carry the weight the Board places on it crumbles under these substantial evidence-based findings.[4]

---

[4] Masimo also faults the Board for citing disclosure in Chin touting its invention for increasing "cardiac pulse modulation." BB 47 (citing Appx21 (citing Appx1331 (9:64-10:7))). Dr. Anthony cited this portion of Chin as relating to the benefits of using a diffuser. Appx1179-1180 (¶99). Masimo points to nothing specific in the record that would disassociate this benefit from the use of a diffuser. In any event, the Board, despite citing this disclosure, never discussed it, and it did not form a meaningful part of its analysis. *See* Appx21.

**B.    The Board Considered, and Correctly Rejected, Masimo's Expert's Flawed Attempt at Recreating the Combined Obviousness Device**

Unable to distance itself from Chin's express teachings, Masimo sought to rely upon an "experiment" performed by its expert, Dr. Madisetti, in support of the notion that Chin's diffuser would not lead to stronger signal strength. This experiment, indisputably, failed to replicate the structure of Apple's proposed combination of Chin with Sarantos/Mendelson-1991, and separately with Ackermans. Thus, the Board properly discounted the experiment in its obviousness analysis. Masimo's astonishing position on appeal—that the Board *must* accept an expert's post-hoc experiment conducted in view of an invalidation proceeding as dispositive evidence of non-obviousness—has absolutely no support in the law and should be rejected.

**1.    Dr. Madisetti's Test Failed To Replicate Apple's Proposed Obviousness Combination**

As a threshold matter, the Board had legitimate basis to "question the significance of the 'experiments' performed by Dr. Madisetti as alleged support for the proposition that a diffuser would have 'detrimental consequences' if applied to a 'reflectance-type' pulse oximeter sensor, presumably such as in Sarantos or Mendelson-1991." Appx24; Appx28. As Apple immediately identified in its petitioner reply, Dr. Madisetti's tests were critically misaligned with Apple's obviousness combination. Appx420-423. Apple's combination employs the multi-detector configuration of Sarantos/Mendelson-1991 and Ackermans, but Dr. Madisetti's experiment used only a single detector system. Appx421-422.

Apple illustrated this glaring discrepancy in its briefing.  First, Apple reproduced the annotated image Dr. Madisetti included in his testing documents showing the configuration of the system he tested, which clearly depicts a single emitter and detector:



Single-detector device used in Dr. Madisetti's experiment.
EX2001, Appendix p 1 (annotations in original)

Appx421 (reproducing annotated image at Appx1821).  Apple juxtaposed this design with the Ackermans and Sarantos configuration, each of which have multiple photodetectors.



APPLE-1014 (Sarantos),
Detail of FIG. 15 (annotated)

APPLE-1016 (Ackermans),
Detail of FIG. 2 (annotated)

Appx421-422 (citing Appx177-183; Appx237-241 (Petition)).

This distinction is meaningful. As Apple explained, citing support from Sarantos and Mendelson-1991, "[d]evices with multiple detectors will detect additional reflected light that will not be detected by a single detector (i.e., light that strikes the area of the device covered by the additional detector)." Appx422 (citing Appx1357 (14:46-55); Appx1364); *see also* Appx427-428. As such, Apple argued to the Board that "the single-detector device used in Dr. Madisetti's experiment is fundamentally different from the devices described in the Sarantos and Ackermans combinations, and therefore the results of the experiment are not indicative of the performance of the combined prior art devices of Sarantos and Ackermans." Appx422-423.

Apple's criticism of Dr. Madisetti's testing continued to the hearing, where Apple emphasized its counterarguments to Dr. Madisetti's testing. *See* Appx563-564 (11:4-12:20); Appx584-585 (32:18-33:8); Appx533-538. Significantly, when asked by the Board why its expert had used a single detector configuration rather

than multi-detector, Masimo could not squarely respond to the question, responding in part that the "multiple detector question is really missing the issue." Appx568-569 (16:8-17:22).

In view of this record, the Board agreed with Apple that Dr. Madisetti's testing did not demonstrate a lack of motivation to implement Chin's diffuser in a multi-detector system. The Board observed that Dr. Madisetti's declaration "[l]eft unexplained . . . the basis to conclude that the commercially available sensor and the particular diffuser materials used somehow should be regarded as constituting the type of sensor that emerges from the combined teachings of Sarantos, Mendelson-1991, and Chin." Appx24. The Board further found that "[t]he record provides considerable doubt in that regard" because, for example, "the commercially available sensor used by Dr. Madisetti is one that has only a single detector, whereas the type of sensors involved in the context of the '695 patent and the pertinent prior art are those that include multiple detectors." Appx24 (citing Appx420-423). The Board rightly believed that this "difference appears significant," and thus concluded "[n]either Patent Owner nor Dr. Madisetti provides any meaningful explanation as to why the outcome of the experiments sheds light on the question of the obviousness." Appx25. The Board's reasoning for not affording Dr. Madisetti's testing is supported by a material defect with the test, and thus should not be set aside.

Masimo now wrongly asserts that Dr. Madisetti's test was relevant—indeed, dispositive—because it purported to demonstrate how Chin's diffuser would

function with a single reflective-type sensor, contrary to its very teachings.  BB 34-38.  Even taking that incorrect allegation at face value, it simply is not what is at issue in this proceeding.  Dr. Anthony's testimony, upon which the Board relied, addressed the combination of Apple's references.  Specifically, Dr. Anthony described the benefit of Chin's diffuser with respect to its application to the multi-detector sensor systems of Sarantos/Mendelson-1991 and Ackermans that Apple proposed in combination with Chin.  Dr. Anthony did not set out to prove, nor did he need to, that Chin would in fact provide the benefit it espouses for its own device, which is what Dr. Madisetti seemingly tried to disprove.  In any event, Chin's disclosure stands on its own, and the Board was well within its fact-finding capacity to credit that disclosure, even in spite of Dr. Madisetti's testing.

Accordingly, contrary to Masimo's assertion (BB 34-35), the Board's proper decision to discount Dr. Madisetti's flawed, post-hoc experiment is not inconsistent with its assessment of the combinations of Chin and Sarantos/Mendelson-1991 and Chin and Ackermans.  Neither Apple nor the Board relied on Chin to provide multiple detectors, as both the Sarantos and Ackermans configuration have multiple photodetectors.  *See* Appx1353 (6:39-42); Appx1357-1358 (14:60-62, 15:24-43); Appx1345 (Fig. 18); Appx1385 (Fig. 2); Appx1128-1129 (¶26); Appx1180-1181 (¶102).

Dr. Anthony made this point clear in the portion of his declaration upon which the Board relied in finding a motivation to combine the references.  Appx20-23 (citing Appx1179-1180 (¶99)).  Dr. Anthony opined there that a skilled

artisan "would have been motivated *to incorporate Chin's diffuser into the pulse oximeter of Sarantos and Mendelson* because the diffuser will cause the light 'to pass through more tissue, and thus more blood,' resulting in a stronger reflected signal, with less relative noise, at the detectors . . . ." Appx1179-1180 (¶99) (quoting Appx1327 (2:4-7)); *see also* Appx21-23 (citing Appx1179-1180 (¶99)); Appx227-229. This testimony, while rooted in Chin's diffuser disclosure, plainly concerns the benefit a skilled artisan would have recognized for the combined multi-detector system.

To the extent there were any doubt, Dr. Anthony further explained during deposition that his opinions were presented with respect to combination of references:

> Q. We keep talking about the combination. So you did not find it necessary to discuss the arrangement of the optical diffuser 180 and the Chin reference by itself; is that correct?
> . . .
>
> [A.] I talk about the combination of Sarantos and Mendelson and Chin starting on page 64 [Appx1177]. *I do not discuss Chin in isolation, but what a POSITA would under- -- would -- would have been motivated to incorporate Chin's teachings resulting in a stronger noise with less relative noise*. Using a diffuser to spread the light was well known in the art as evidenced by Chin.

Appx1974 (122:4-17).

In any event, Chin's teaching regarding the benefits of a diffuser stands on its own and the Board was permitted to rely on this teaching. *See* Arg. Sec.II. Because substantial evidence exists from the references and Dr. Anthony's testimony as to how the combination would function and demonstrate obviousness,

the Board was justified in concluding that Dr. Madisetti's testing, which did not confront this evidence, was not "particularly probative of the obviousness question." Appx25.

Finally, Masimo cites to Dr. Madisetti's deposition testimony where he took the position, absent from his declaration, that "the results of the experiment are not restricted to a single detector configuration." BB 37-38 (citing Appx1760 (57:12-20)). That testimony is insufficient to show error in the Board's analysis. Dr. Madisetti did not conduct an experiment using a multi-detector system, so his testimony as to what results may have come from a multi-detector test is pure speculation. The Board need not rely on such unsupported speculation, even when presented by an expert. *See, e.g.*, *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1381 (Fed. Cir. 2022) (holding expert's "unsupported speculation is insufficient to overcome the Board's contrary finding based on the references themselves"); *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2021-1995, 2022 WL 1613188, at *2 (Fed. Cir. May 23, 2022) (non-precedential) (affirming Board decision that "discredit[ed] [expert] testimony because it was based on little evidentiary support in the record and instead largely premised on [expert]'s speculation" (quotations omitted)). Indeed, the Board's governing procedures prevent it from accepting expert opinions that lack proper grounding in "facts or data." *See* 37 C.F.R. § 42.65 ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

### 2.   Rebuttal Testimony from Dr. Anthony Was Not Necessary To Overcome Dr. Madisetti's Flawed Testing

Quite telling is that nowhere in its argument concerning Dr. Madisetti's experiment does Masimo address the direct testimony of Dr. Anthony that Apple submitted with its petition, which the Board found "persuasive" and upon which the Board relied.  Appx21; Appx24.  Instead, Masimo suggests, incorrectly, that Apple was obligated to submit a rebuttal declaration from Dr. Anthony to overcome Dr. Madisetti's testing.

The Board "is not required to accept expert testimony simply because it was not challenged . . . ."  *Belden Inc. v. Berk-Tek LLC*, 610 F. App'x 997, 1003 (Fed. Cir. 2015) (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1379 (Fed. Cir. 1998) ("The fact that Applied Medical did not contest this point with testimony from one of its own experts no more resolves the factual question in Surgical's favor . . . .")); *see also Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988) (holding evidentiary rules and case law "do not support SGK's conclusion that a court must credit expert testimony which goes uncross-examined").  This law has particular force here because rebuttal expert testimony was unnecessary for Apple to call attention to the undisputed fact that Dr. Madisetti's tested a single detector system rather than a multi-detector system.  The Board was competent to appreciate this defect with Dr.

Madisetti's experiment, as it did, without the guidance of a rebuttal expert. Appx24-25.[5]

Nevertheless, Masimo's characterization of Dr. Madisetti's testimony as "unrebutted" paints an incomplete picture.  Dr. Madisetti testified that the purpose of his experiment was "just confirming the basic knowledge of a POSA or a POSITA."  Appx1760-1761 (57:21-58:9).  Dr. Anthony's testimony demonstrates the knowledge and motivations of the same skilled artisan, although with one critical difference: Dr. Anthony performed his analysis in view of the teachings of the prior art.  *See* Appx1177-1180 (¶¶95-101); Appx1216-1218 (¶¶160-163).  Dr. Anthony's direct testimony is the relevant and appropriate testimony for the Board to consider because it describes the motivations of a skilled artisan grounded in the prior art references Apple presented.  In fact, IPR proceedings are permitted to proceed "only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311.  Thus, the Board was required to perform its analysis primarily on the basis of the paper prior art references from Apple's petition, as Dr. Anthony did.

---

[5] As a practical matter, IPR proceedings routinely lack a rebuttal expert declarations.  Accepting Masimo's argument would suggest to the bar that rebuttal declarations are essentially required for petitioners to prevail, which would increase cost and complexity of proceedings that were designed to provide an efficient means for resolving patent validity.  *See Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (Apr. 20, 2020) ("By providing for inter partes review, Congress . . . sought to weed out bad patent claims efficiently." (citing H. R. Rep. No. 112-98, pt. 1, p. 40 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."")).

Other similarly situated cases have approved of what the Board did here. For instance, in *Dako Denmark A/S v. Leica Biosystems Melbourne Party Ltd.*, 662 F. App'x 990 (Fed. Cir. 2016), the Board's finding of motivation to combine the prior art "primarily relied" on an express statement in the prior art reference. *Id.* at 997. The Board also considered the opposing patent owner expert's testimony "and found it lacking against the express disclosures of" the prior art. *Id.* The Court would "not disturb this determination," finding that the Board's finding that a skilled artisan "would have been motivated to combine" was supported by the substantial evidence found from the references themselves. In fact, this Court has instructed that expert testimony "plainly inconsistent with the record" must be disregarded, even if unrebutted: "[A] court should discount any expert testimony that is clearly at odds with . . . the written record of the [prior art] patent." *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378-79 (Fed. Cir. 2017) (rejecting Board's conclusion that it could not discount expert testimony that went unrebutted); *cf. Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) ("Nothing in the [Federal] [R]ules [of Evidence] or in our jurisprudence requires the fact finder to credit the unsupported assertions of an expert witness."). Thus, at the very least the Board's reliance on the express teachings of Chin, Sarantos, Mendelson-1991, and Ackermans over the testimony of Dr. Madisetti has substantial evidence support, and the Board would have exceeded its bounds had it credited Dr. Madisetti's experiments over those teachings.

Finally, the Board did not "put itself into the role of a rebuttal expert" by discounting Dr. Madisetti's experiment without receiving rebuttal testimony from Dr. Anthony. *Contra* BB 34. Rather, the Board acted as an arbiter of fact by weighing the relevant evidence, which is its role. *See Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021) ("The Board is certainly entitled to weigh evidence . . . ."). That includes the weighing of expert testimony against the other evidence of record. *See Icon Health*, 849 F.3d at 1041 ("[T]he PTAB is permitted to weigh expert testimony and other record evidence . . . ."). As part of this weighing of evidence, the Board is not required to base its findings on expert testimony because "the Board can make findings without expert testimony." *Intell. Ventures II LLC v. Aisin Seiki Co.*, 813 F. App'x 532, 538 (Fed. Cir. 2020) (citations omitted) (affirming Board's obviousness finding as supported by substantial evidence where "the Board considered expert testimony in addition to the disclosures of the prior art] itself[,] weighed this evidence and chose not to credit the testimony of [patent owner]'s expert").

Thus, the Board did not step outside the bounds of its role as arbiter of fact in this case. Masimo's citation to *DSS Technology Management, Inc. v. Apple Inc.*, 885 F.3d 1367 (Fed. Cir. 2018)—the only legal support Masimo provides for its entire argument concerning Dr. Madisetti's experiment—to argue that the Board overstepped is irrelevant as it has nothing to do with the facts of this case. Masimo cites *DSS* for the unremarkable observation that "conclusory statements and unspecific expert testimony" might not provide a substantial evidence record upon

which the Board may find obviousness. 885 F.3d at 1376. *DSS* does not hold, nor does any other legal authority of which Apple is aware, that the Board's analysis is somehow governed by this standard for expert testimony. Even if it were, the Board's analysis here meets this standard, as it ultimately relied on the persuasiveness of Dr. Anthony's testimony examining the specific teachings of the prior art references under examination.

### 3. Even Accepting Dr. Madisetti's Testing Results as Relevant, the Board's Decision Must Stand

Because Dr. Madisetti's experiment failed to demonstrate the multi-detector prior art combination Apple proposed, the Board acted well within its discretion not to afford the evidence significant weight. However, even if Dr. Madisetti's experiment had succeeded for its purpose of demonstrating that using a diffuser would weaken signal strength, contrary to Chin's teaching, the Board's decision should still be affirmed.

The Board considered Masimo's argument, premised on Dr. Madisetti's experiment, that using a diffuser could cause a decrease in signal strength. Appx23-24 (citing Appx375-376; Appx384-387). In response, the Board concluded that, "[i]n this case, even if some negative or undesirable conditions were to emerge in some circumstances from the use of a diffuser as a part of one type of oximeter sensor, that does not establish the non-obviousness of such a sensor with a diffuser." Appx23-24. The Board's conclusion here is well-supported in the law, which the Board cited. For obviousness, "the evaluation does not require that the combined teachings of references must produce a device that is

somehow superior, or free of disadvantages, as compared with other prior art devices." Appx23. Rather, "[t]he fact that the motivating benefit comes at the expense of another benefit, however, should not nullify its use as a basis to modify the disclosure of one reference with the teachings of another. Instead, the benefits, both lost and gained, should be weighed against one another." Appx23 (quoting *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n.8 (Fed. Cir. 2000)); *id.* (quoting *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) ("[A] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine.")).

As applied to this record, the Board concluded that Apple's proposed combinations would still remain obvious even if Dr. Madisetti were correct that some detrimental effects, such as decrease in signal strength, may occur in these combinations. Appx24; Appx28. It found "more persuasive Petitioner's view, and Dr. Anthony's supporting testimony, that a skilled artisan would have appreciated that a diffuser provides a benefit in spreading light and providing for it to pass through more tissue" even with this potential downside. Appx24 (citing Appx227-229; Appx417-420; Appx423-426; Appx1178-1180 (¶¶96-101)). Thus, even if Dr. Madisetti's experiment were credited for its intended purpose, the Board's decision is still supported by substantial evidence and should not be set aside.

**III.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT CHIN RECOGNIZES BENEFITS FOR INCLUDING A DIFFUSER AT TISSUE LOCATIONS THAT ARE THICK OR THIN**

Much like with the previous argument, Masimo erroneously attempts to narrow Chin's broad and unqualified disclosure concerning its diffuser.  This time, Masimo alleges that Chin's teachings are applicable to only sensors applied to "thin" tissue sites such as a nostril.  This Court should reject Masimo's attempt to revitalize the same arguments that the Board roundly rejected because substantial evidence supports the Board's finding that Chin's diffuser is not limited to thin tissue sites.

**A.    Chin Makes No Distinction Between Thin and Thick Tissue**

As has been noted, the Board relied on two teachings in Chin concerning its diffuser to conclude that skilled artisan would have been motivated to implement this diffuser in Apple's combinatory references: *first*, Chin's background section describes how a diffuser causes light "to pass through more tissue, and thus more blood," Appx1327 (2:4-7)); and *second*, Chin shows its invention with "an optional optical diffuser 180 for diffusing the light from emitter 176, which causes a further spreading or mixing of light and may enhance the amount of tissue penetrated in some instances," Appx1330 (8:25-29).  Appx20-21 & n.9.  As explained above, Chin does not qualify or otherwise limit these general disclosures about diffusers, and the Board properly found them to be generally applicable. Appx20-21; Appx28; *see supra* Arg. Sec.II.A.1.

Masimo's second bite at the apple to try to confine Chin's diffuser to a particular type of system—this time a thin tissue sensor—ignores Chin's teachings and the Board's well-reasoned analysis. Beyond finding that Chin's diffuser teachings are generally applicable, the Board further found that none of the disclosure is limited by the thickness of the tissue to which Chin's sensor attaches. Appx18-19 ("[W]e do not discern that Patent Owner points to any disclosure in Chin that limits its teachings to any particular tissue sites, let alone only sites regarded as 'thin.'"). Instead, the thin-versus-thick distinction, at least with respect to Chin, is a false dichotomy created by Masimo that "draws little, if any, support from the prior art evidence of this proceeding." Appx18.

The correctness of this finding is evident upon examination of Masimo's argument on appeal. Masimo asserts that "all of Chin's other teachings come in the context of thin tissue measurement sites . . . ." BB 40. In other words, Masimo argues that, because Chin's disclosed embodiments are mainly for sites Masimo—not Chin—describes as thin, Chin's teachings are valid for only thin-tissue sites. Masimo cites no law that supports this syllogism. Instead, this Court's cases have rejected such arguments. *See IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1264 (Fed. Cir. 2018) (affirming Board's refusal to restrict prior art reference to "merely exemplary" embodiment where the prior art reference did not "exclude other implementations"); *Ultradent*, 127 F.3d at 1068.

Apart from its finding that neither Chin's diffuser teachings nor its embodiments are limited, the Board also found that Chin expressly teaches that its

41

invention is not limited to tissue of a particular thickness.  Specifically, Chin discloses that its "sensor *could be any type of sensor*" and it "*could attach to any body part*, such as the earlobe, *finger*, etc."  Appx1329 (5:54-57).  Chin's disclosure that the sensor could attach "to any body part" is broad enough on its own to demonstrate Masimo is wrong.  Moreover, the exemplary "finger" Chin provides is clearly not within the 3-5 millimeter range Masimo proposes for "thin" tissue.  *See* BB 42-43.  Indeed, when the Board suggested to Masimo at the oral hearing that a finger was not "thin," Masimo did not squarely respond other than argue that Chin's disclosure is limited to its thermistor embodiment.  *See* Appx573-575 (21:11-23:17).

As described earlier, Masimo's attempt to confine this portion of Chin to a description of its thermistor embodiment does not pass muster.  *See* Arg. Sec.II.A.2.  The Board strongly agreed with Apple in this regard as it related to this "any body part" language, explaining that Masimo's attempt at limiting "is ill explained and is not consistent with Chin's plain disclosure."  Appx20.  The Board found instead that "Chin, itself, provides the context in setting forth that its sensor is not limited to use with any particular body part" and concluded "[t]here can be no credible argument that a skilled artisan would not readily regard Chin's teachings as extending beyond simply a sensor that is used for a nostril" in light of this disclosure.  *Id.*

This Court should reject Masimo's arguments for the same sound reasons the Board did.

**B.     The Board Was Not Required To Infer that Chin Pertains to Thin Tissue Sensors Based on Masimo's Speculation**

Masimo's other supporting argument for its proposed thick/thin delineation is that the Board should have accepted Masimo's theory that Chin's nostril sensor embodiment includes a nostril sensor comprising "enhancements"—including the diffuser—that would be needed for only a thin-tissue sensor.  BB 40-42.  This theory is based on pure speculation.  Chin never connects the enhancements of its nostril sensor to a thin-tissue sensor.  Indeed, as the Board noted, "Chin does not describe any tissue site to which its sensor is applied as being 'thin,'" let alone confine its embodiments to a thin tissue site.  Appx19.  The theory also ignores Chin's separate diffuser disclosure from its background section that is not connected to its nostril sensor embodiment upon which the Board relied.  *See* Appx20 (contrasting Chin's "general[]" teaching about the benefits of a diffuser with "the more particular[]" description made in conjunction with Chin's nostril sensor embodiment).

The Board was not required to accept Dr. Madisetti's opinion in support of Masimo's theory.  As the Board recognized, Masimo's "reliance only on the uncorroborated testimony of Dr. Madisetti is inadequate to establish the proposed dichotomy" between thick and thin tissue sites.  Appx19 (citations omitted).  Masimo takes issue with the Board characterizing Dr. Madisetti's testimony as "uncorroborated" because Dr. Madisetti included citations to the prior art in his declaration.  BB 42.  This response does not appreciate the Board's full criticism, which was that "Dr. Madisetti points to no ***adequate*** evidence or basis to support

his conclusions on the matter." Appx19. Although Masimo is correct that Dr. Madisetti includes several citations while presenting this theory, none of those citations teaches that the enhancements in Chin's nostril sensor, or any of the features in Chin for that matter, are necessarily limited to a thin tissue sensor. Masimo tellingly did not reproduce this purported corroboration in its brief. *See* BB 42 (citing Appx1797-1800 (¶¶52-56)). Masimo is effectively asking the Court to take its word for that Dr. Madisetti's citations prove the thin/thick theory.

They do not. For example, in this portion of his report, Dr. Madisetti cites to the challenged '695 patent and its description of reflectance sensors. *See* Appx1797-1798 (¶52) (citing Appx143 (Fig. 6); Appx150 (10:14-20, 10:27-31)). The next paragraph Masimo recites has no citations to the prior art. Appx1798 (¶53). Then, Dr. Madisetti alleges that Chin uses reflective surfaces to "counteract insufficient backscatter on thin tissue measurement sites," but the portions of Chin he cites never describe them as being particularly useful for or limited to thin tissue sites. Appx1798-1799 (¶54) (citing Appx1324 (Figs. 5C-5E); Appx1330 (7:13-20, 7:35-41)). Dr. Madisetti next speculates that Chin's nostril sensor embodiment includes certain features—including its diffuser—to account for thin nostril tissue, but the citations merely explain these features and do not tie them to thin tissue. *See* Appx1798-1799 (¶55) (citing Appx1327 (2:59-62) (disclosing heater); *id.* (2:39-41) (disclosing offset emitters and detectors); Appx1330 (8:25-29) (disclosing diffuser); Appx1325 (Fig. 7B) (depicting nostril sensor embodiment)). Dr. Madisetti concludes by asserting that a skilled artisan would have understood

Chin's invention as being limited to thin tissue sites and thus not applicable to the purported thick tissue sites from other references such as Sarantos, Mendelson-1991, and Ackermans, but again cites to nothing from Chin in support and cites to only these other combinatory references. *See* Appx1800 (¶56) (citing Sarantos (Appx1354 (7:12-16)); Mendelson-1991 (Appx1363 (Abstract)); Appx1380 (10:31-32)); U.S. Patent No. 8,998,815 ("Venkatraman"); Appx1287 (15:43-45)).

The Board certainly did not have to rely on Masimo's uncorroborated and speculative testimony. *See Polaris*, 48 F.4th at 1381 (holding expert's "unsupported speculation is insufficient to overcome the Board's contrary finding based on the references themselves"). The Board was entitled to rely instead on the disclosure of Chin and testimony of Dr. Anthony. The relevant question is not whether substantial evidence could support Masimo, but whether substantial evidence supports what the Board actually found, and here it does.[6]

---

[6] Masimo also argues that the Board was wrong to "take note" that Masimo and Dr. Anthony never provided an "adequate explanation" as to how Masimo defines "thick" and "thin" tissue sites. Appx42-43. Yet, even on appeal, all Masimo does is point to a label in one of Chin's figures depicting a reading of "3-5 mm," but with no indication of how this measurement fits within Masimo's thick/thin framework. BB 43 (citing Appx1324). In any event, there is no indication that this observation drove the Board's conclusion, and the Board separately noted that it understood Masimo to argue that a nostril or earlobe would be exemplary thin tissue sites, whereas a wrist would be an exemplary thick tissue site. Appx18 n.7.

**IV.    SUBSTANTIAL EVIDENCE EXISTS FOR THE BOARD'S FINDINGS REGARDING SARANTOS AND ACKERMANS IN SUPPORT OF A MOTIVATION TO COMBINE**

Masimo last argument shifts focus to the Sarantos and Ackermans references, but is plagued by the same defects as its earlier arguments.  Masimo asks this Court to substitute Masimo's view of the record for the Board's, despite the Board's findings and conclusions having substantial evidence support.  The Court should deny Masimo's request for de novo fact finding on appeal.  Instead, the Court should affirm the Board's decision that a skilled artisan would have been motivated to combine Chin with both Sarantos (along with Mendelson-1991), and with Ackermans.

**A.    A Skilled Artisan Would Have Understood that a Diffuser Could Be Beneficially Implemented in the Sarantos/Mendelson-1991 System**

Masimo's central premise for arguing that the Board erred in analyzing Sarantos is essentially that the detector arrangement in Sarantos is so finely tuned that any minor adjustment to it would wreak havoc on the system.  BB 51-54.  Masimo's argument is fraught with error because it relies on many assumptions that either the record does not support or that the Board was not required to accept.  With the significant deference owed to the Board's factual findings, Masimo simply cannot prevail with this speculative argument on appeal.

The first flawed assumption underlying Masimo's argument is that applying a diffuser to Sarantos would necessarily spread emitted light beyond the 1-4 millimeter range Sarantos sets out for its detectors in one embodiment.  BB 52-53.

Although Masimo cites to Dr. Madisetti to support this assumption, nothing in Dr. Madisetti's declaration, nor in Chin, dictates that a diffuser would spread light out to such a degree that detection would be significantly hindered if the detectors were spaced 1-4 millimeters from the emitter.  By a similar token, Masimo argues that "using a detector with at least a 2:1 dimension ratio" is Sarantos's "principle of operation," and assumes that using a diffuser would necessarily disrupt this ratio.  BB 55 (citing Appx1355 (9:57-67)).  Yet, the cited portions of Dr. Madisetti's declaration do not even mention this dimension ratio, let alone the impact a diffuser would have on achieving that ratio.  *See* Appx1810-1812 (¶¶73-74).

Accepting these assumptions is necessary for Masimo's argument to hold, but the record simply contains insufficient evidence to support them.  Apple presented this evidentiary gap to the Board, and the Board agreed that Masimo had not shown the ill-effects it alleges would necessarily occur.  *See* Appx25 ("[W]e agree with Petitioner that it simply does not follow from the teachings of the prior art, specifically Chin, that a diffuser applied to a different device such as that arising from the Sarantos and Mendelson-1991 combination, would have some sort of negating effect that would disrupt operation of the device." (citing Appx426)).[7]

---

[7] Masimo is wrong to assert that the Board "did not analyze Sarantos at all" in reaching this conclusion.  BB 56.  Although the Board's analysis did not directly cite Sarantos, it cited particular portions of Masimo's patent owner response, Dr. Madisetti's declaration, and Apple's petitioner reply, all of which directly cite and discuss Sarantos.  *See* Appx25-26 (citing Appx386-387; Appx1811-1812 (¶74); Appx426).

Even if the record were to support that Chin's diffuser spread light to such a degree that Sarantos would need to place its detectors further than 4 millimeters from the emitter, Masimo assumes that skilled artisan would not have been motivated to implement such a configuration. This assumption ignores the explicit teachings of Sarantos. Sarantos unambiguously teaches that ""*implementations discussed herein may be used in products that achieve* closer or *farther spacing* from the light source center, such as spacing closer than 1 mm or *farther than 4 mm*." Appx1359-1360 (18:66-19:2). Thus, even according to Sarantos, its detectors may be spread out farther than 4 millimeters apart. *See In re Inland Steel Co.*, 265 F.3d 1354, 1361 (Fed. Cir. 2001) ("[T]he fact that a specific embodiment is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered." (quotations omitted)).

Masimo's attempted counterpoint here is misleading. Quoting from Sarantos, Masimo argues it "may be counterproductive" to space detectors further than 4 millimeters from the emitter and such spacing would lead to higher power consumption. BB 52 (quoting Appx1360 (19:13-18)). Masimo's cunning use of ellipses removes the critical part of this quote. With emphasis used to show the portion Masimo omits from its brief, Sarantos states that placing the detector further than 4 millimeters from the emitter "may prove counterproductive, as a higher intensity light source may be needed *to ensure that sufficient light is diffused across the increased distance* in order to obtain a sufficiently strong signal at the photodetector." Appx1360 (19:13-18). As the omitted material

shows, Sarantos's concern with spacing the detectors further apart is the need to diffuse light across the greater distance. Of course, in combination with Chin, that light is already being diffused by virtue of the diffuser—the very reason Masimo argues a skilled artisan would place the detectors further apart. Masimo's circular reasoning does not hold. One would not need to use a higher powered sensor to achieve the result the diffuser is already effecting. Thus, Masimo's assumption that skilled artisan would not use a detector arrangement beyond 4 millimeters in Sarantos is faulty.

Finally, even if Masimo were right that applying a diffuser to Sarantos would require greater spacing for the detectors and also a higher powered emitter, Masimo assumes a skilled artisan would not have been motivated to use a diffuser for this reason. BB 55-56. This alleged downside, however, is simply a tradeoff that a skilled artisan would need to consider. As the Board recognized, "a given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine" because "the benefits, both lost and gained, should be weighed against one another." Appx23 (quoting *Medichem*, 437 F.3d at 1165; *Winner*, 202 F.3d at 1349 n.8)). The Board credited Dr. Anthony's testimony that a skilled artisan would have recognized the benefits of stronger signal strength and spreading light. Appx25-26; *see also* Appx21; Appx23-24. Therefore, Masimo is wrong that the downsides it alleges, even if true, would displace the Board's finding of motivation to combine.

**B.    A Skilled Artisan Would Have Understood that a Diffuser Could Be Beneficially Implemented in the Ackermans System**

Masimo's arguments about a lack of motivation to use Chin's diffuser stemming from Ackermans's design proceed along the same lines as its Sarantos argument.  BB 56-58.   For the same reasons, the Court should reject these arguments.  Masimo points to no teaching in Ackermans or Chin to demonstrate that Chin would diffuse light to such a degree that Ackermans would not work as intended, as the Board found.  Appx28; Appx25-26.  Indeed, Masimo did not direct the Board or this Court to any disclosure in Ackermans suggesting a particular range from the emitter for placings its detectors.

The Board did not err by incorporating its analysis regarding Sarantos for concluding that Masimo's Ackermans-based arguments.  *Contra* BB 57 (citing Appx28).  Masimo presented, through Dr. Madisetti, the same basic argument for both references.  For example, Dr. Madisetti claimed that a skilled artisan would not use a diffuser in either reference because nowhere do those those references specifically position their detector close to the light source.  *Compare* Appx1810 (¶73) ("A POSITA would not make such a modification because Sarantos explicitly positions its photodetectors close to the light source . . . ."), *with* Appx1817-1818 (¶87) ("A POSITA would not make such a modification because Ackermans explicitly positions its photodetector close to the light emitter."); *see also* Appx384-385; Appx395.

Dr. Madisetti's other argument, that the sensors components were carefully arranged, was also shared between both references.  *Compare* Appx1811-1812

50

(¶74) ("A POSITA would not have been motivated to add Chin's diffuser to a Sarantos-Mendelson device because Sarantos already carefully arranged its optical elements to maximize the amount of light reaching the detector. A diffuser's further spreading of the light simply negates Sarantos' efforts."), *with* Appx1818-1819 (¶89) ("A POSITA would not have been motivated to add Chin's diffuser to Ackerman's device because Ackermans already carefully arranged its optical elements to minimize the effects of motion artifacts. A diffuser's further spreading of the light simply negates Ackermans' efforts."); *see also* Appx386-387; Appx396-397.

The Board, therefore, was justified in dismissing these arguments for the same reasons. Appx28. That is, without specific teachings in Chin's or Ackermans to support Masimo's assumptions, "it simply does not follow from the teachings of the prior art, specifically Chin, that a diffuser applied to a different device . . . would have some sort of negating effect that would disrupt operation of the device." Appx25; Appx28.

* * *

The Board's decision is sound both legally and factually, and it should be affirmed.

## V.   MASIMO PRESENTED NO OBJECTIVE EVIDENCE OF NONOBVIOUSNESS TO THE BOARD

Masimo sporadically asserts that its alleged invention's use of a diffuser ran contrary to "conventional wisdom" and achieved "surprising results." *See, e.g.*,

BB 4-5, 10.  It also vaguely suggests that the '695 patent's invention is somehow responsible for Masimo's alleged success in the market.  BB 3.  However, Masimo presented no evidence or argument concerning objective evidence of nonobviousness to the Board.  Appx11 n.6 ("Patent Owner does not present objective evidence of non-obviousness"); *see* also Appx351-353.  Because Masimo "did not ask the Board to make any factual determinations" on these issues, this Court should reject Masimo's puffery.  *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1152 n.2 (Fed. Cir. 2021).

## CONCLUSION

For the foregoing reasons, Apple respectfully asks the Court to affirm the Board's decision.

Dated:  February 1, 2023                Respectfully submitted,

   */s/ Lauren A. Degnan*

Lauren A. Degnan
W. Karl Renner
Michael J. Ballanco
Laura E. Powell
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

Robert Courtney
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070

***Attorneys for Appellee Apple Inc.***

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on February 1, 2023, I electronically filed the foregoing

**RESPONSE BRIEF** of appellee using the Court's CM/ECF filing system.

Counsel for appellant were electronically served by and through the Court's

CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Lauren A. Degnan*
Lauren A. Degnan

## <u>CERTIFICATE OF COMPLIANCE</u>

The **RESPONSE BRIEF** of appellee is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 12,043 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.


Dated:  February 1, 2023                              */s/ Lauren A. Degnan*
                                                       Lauren A. Degnan